UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x          Chapter 13

In Re

Eileen Fagan                                                    Case No. 04-23460

                    Debtor

-----------------------------------------------------x

**EILEEN FAGAN,**                                               Adv. Proc. No.

                                        **Plaintiff,**

              vs.

**DEUTSCHE BANK TRUST COMPANY OF**
**AMERICA'S F/K/A BANKERS TRUST**
**COMPANY, AS TRUSTEE**
**C/0 Homecomings Financial Network, Inc.**
**GMAC Financial Services, and**
**JOHN DOE, JANE DOE, XYZ CORP,**
**fictitious names for substation of parties**
**when discovered.**

                                        **Defendants.**

_____


**Complaint Seeking Damages in Core Adversary Proceeding**


**Introduction**


1.      This is an action for actual and punitive damages filed by the debtors pursuant to

Sections 2605(e)(1)(A) and 2605(e)(1)(B)(2) of Title 12 of the United States Code and Sections

3500.21(e)(1) and 3500.21(e)(3) of Regulation X.


**Jurisdiction and Venue**


2.      Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of

Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned

Chapter 13 case under Title 11 and concerns property of the debtors in that case.

3.　　　　This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.

4.　　　　This court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code.

5.　　　　This Court has jurisdiction to hear the claims for relief under the Real Estate Settlement Procedures Act pursuant to Section 2614 of Title 12 of the United States Code.

6.　　　　This matter is a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order.  However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiffs consent to the entry of a final order by the Bankruptcy Judge.

7.　　　　Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

### Parties

8.　　　　The Plaintiff, Eileen Fagan, is 32 and was earning $40,000.00 per year in 2001 at the time of her loan ("the loan") from Matrix Financial Services.  She was and is a debtor under Chapter 13 of Title 11 in the above-captioned case.

9.　　　　The Defendant, Deutsche Bank Trust Company of Americas F/K/A Bankers Trust Company, as Trustee is a banking corporation organized and existing under and by virtue of the laws of the state of Delaware, with an address in c/of Homecomings Financial Network, LLC., 9350 Waxie Way San Diego, CA., and does business in this District and is the alleged successor to the Matrix loan

2

10.     The Defendant, Homecomings Financial Network, LLC., is a mortgage servicer of the loan located in 2711 N Haskell, Suite 900, Dallas, TX 75204, and does business in this District.

11.     The Defendant, GMAC Financial Services, is located in 3451 Hammond Drive, Detroit, MI 48265, and does business in this District.

**Factual Allegations**

12.     On October 22, 2001, Matrix Financial Services Corp., loaned $284,750.00 for Thirty (30) years at $2,551.65 per month (not including real estate tax and insurance) to Plaintiff Eileen Fagan, a single 25 year old who was earning $40,000.00 ($3,333.34 per month) and had one child, for property located at 16 Brewster Avenue, Stony Point, NY 10980. The monthly interest started at 10.25% per month. Upon information and belief, this is a Predatory Loan. Servicing for the loan ultimately ended up with Homecomings Financial Network, LLC, and they have steadily increased her interest payment at each six month period, which is now almost 14% per month.

13. A Chapter 13 petition for the Plaintiff herein was commenced by filing a voluntary petition on September 21, 2004. On September 22, 2004, the Bankruptcy Noticing Center notified Defendant of Plaintiffs' bankruptcy case.

14. The Chapter 13 plan was filed on September 21, 2004 together with 60 month application with the petition.

15. Plaintiff attended the 341(a) meeting of creditors in White Plains, New York on November 12, 2004. Debtor filed a Modified Chapter 13 plan on March 7, 2005 to cure objections of the Chapter 13 Trustee and then of the Defendant herein.

16. Plaintiff's plan was confirmed on March 12, 2005.

17. Since the filing of Plaintiff's case, she has made MONTHLY POST-PETITION payments to Homecomings Financial as the mortgage service for Deutsche Bank Trust Company and they have CASHED each payment.

18. The Defendant filed a Motion for Relief from Stay on April 4, 2006. The hearing regarding the motion was held on April 27, 2007. The motion was denied on May 4, 2008 because it lacked factual basis and Deutsche Bank Trust Company Americas F/K/A Bankers Trust Company was ordered to pay the Law Office of Shmuel Klein, PC the sum of $700.00 within ten days of the motion.

19. The Debtor's attorney tendered a "Qualified Written Request" to Homecomings Finacial, pursuant to the Real Estate Settlement Procedures Act (RESPA) on or about June 14, 2006.

20. The Plaintiff averts that the Defendant received the Qualified Written Request, which was acknowledged by Defendant on June 22, 2006. In the same letter, the Defendant requested an extension of thirty days to provide the documents the Plaintiff requested. Plaintiff agreed with the addition that Homecomings Financial will take no action against the Debtor pending compliance with the Qualified Written Request according to the RESPA agreement.

21. As of the filing of this pleading the said Defendant has failed to have any form of communication with the debtors' attorney, or with the debtors since their acknowledgement letter from one year and one month ago to respond to or acknowledge the aforesaid Qualified Written Request regarding the subject account, which is a per se violation of RESPA.

22. Despite the denial of the April 2006 Motion for Relief from Stay, Defendant filed A motion to lift the stay again on June 1, 2007.

23. Plaintiff's mother, Linda Fagan, sent the May 2007 mortgage payment on or about

May 14, 2007. When the check did not clear, she called Homecomings. Homecomings acknowledged

that they received the check, but the account servicing agent did not know why it was not cashed. She

called again two weeks later to check on the status of the check, in which she was told they had never

received it. She stopped the check and sent another check via overnight on June 13, 2007. Although

Homecomings received the new check by overnight courier on June 14, 2007, it was not cashed until

June 27, 2007. Homecomings next tried to cash the May 2007 "lost check," which she had stopped,

and sent her notice in July that the check was "returned unpaid."

24. Like the aforementioned June 2007 check, which was cashed two weeks after it was

received, four of the five previous payments dated, 12/27/2006, 1/24/2007, 2/26, 2007, and

4/25/2007, were cashed approximately two weeks after they were received, which deliberately creates

late fees and penalties on the account, and even bounce check situations.

25. On June 13, 2007 the Defendant filed a Reply Affirmation in Support of Secured

Creditor's Motion to Terminate the Automatic Stay in which they included a copy of the Mortgage.

26. Number two of the Covenant is the Application of Borrower's Payments and Insurance

Proceeds. It states:

First, to pay interest due under the Note;
Next, to pay principle due under the Note; and
Next, to pay the amounts due Lender Under Section 3 of this Security Instrument,
Such payments will be applied to each Periodic Payment in the order in which it became
due.
Any remaining amounts will be applied as follows;
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next to reduce the principal balance of the Note.

27. This contract required Defendant to first apply all payments to interest, then

5

Principal and then to any other allowed charges as stated in the Note. However, as noted in the Post

Petition Payment History that shows all payments received by the Secured Creditor post petition, the

Defendant began applying to Suspense on October 12, 2004 in the amount of $17.17 instead of

applying this amount to reduce Principal as required in the Note. This activity continues to occur

monthly without reducing the Principal nor properly reducing the interest. For example, on December

13, 2004, the Plaintiff's Suspense account was in the amount of $2,977.75, bringing the Suspense up to

$3,012.09. According to the October 20, 2004 letter from Homecomings, the Plaintiff's payments

starting in December 2004 were $2,625.74. The Suspense amount was more then enough to pay off

her December payment despite having to properly reduce the principal and the interest thereon on a

monthly basis.

28. This activity can be seen over the course of the loan, and more specifically on but

not limited to the following dates, as the amount in Suspense could have drastically reduced the monthly

payments, principal, and interest: December 27, 2005 in the amount of $233.49, bringing the Suspense

up to $2890.37, June 29, 2006 in the amount of $290.83, bringing the Suspense up to $3339.88,

December 4, 2006 in the amount of $130.86, bringing the Suspense up to $3844.18, and March 30,

2007 in the amount of $188.96, bringing the Suspense up to $4,523.94.

## COUNT I
### Failure to Comply with Section 2605 of Title 12

29. The allegations in paragraphs 1 through 28 of this complaint are realleged and

incorporated herein by this reference.

30. The Defendant, Homecomings, is the servicer of a "federally related mortgage loan"

as that term is defined in Section 2602(1) of Title 12 of the United States Code.

31. The Defendants did not, within 90 days of receipt of the "qualified written request" (even with a granted 30 day extension), provide the information requested and inform the Plaintiffs of its actions as required by Section 2605(e)(1)(B)(2) of Title 12 of the United States Code and 3500.21(e)(3) of Reg. X.

32. The Defendants have failed to comply with Section 2605 of Title 12 of the United States Code.

33. Pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21(f) of Reg. X, the Plaintiff may recover of the Defendant actual damages, costs and reasonable attorney fees for each failure of the Defendant to comply with any part of Section 2605 of Title 12 of the United States Code.

## COUNT II
**Breach of Duty**

34. The allegations in paragraphs 1 through 33 of this complaint are realleged and incorporated herein by this reference.

35. Defendants owes a reasonable duty of care to its clients.

36. This duty includes accurate record-keeping, diligent oversight, responsible investigation, as well as truthful and accurate reporting of information to third parties.

37. Defendants lost and/or misapplied multiple payments timely submitted by the Plaintiff.

38. Defendants then incorrectly reported these payments as "late" to consumer credit

reporting agencies, which are third parties involved in collecting, storing and reporting individual credit information.

39. By these misplacements, misapplications, improper reporting and failures, Defendants breached their duty to the Plaintiff.

40. As a direct and proximate cause of Defendants breach, Plaintiff has been harmed. The harm to Plaintiff includes that her credit scores have diminished precipitously, resulting in Plaintiff's inability to secure financing for rent-to-own property, depriving Plaintiff of her ability to conduct business and earn a living.

## Count III
## Conversion

41. Paragraphs 1-40 are incorporated herein by reference.

42. The Intentional Tort of Conversion is defined as follows: Personal property is "converted" if a person exercises control over an owners personal property in a way that: 1) Is contrary to the owners right to the personal property, or 2) Intentionally destroys or changes the personal property, or 3) Intentionally deprives the owner of possession of the property permanently, or for an indefinite period of time.

43. Plaintiff's check payments to the Defendants constitute Plaintiffs personal property.

44. Defendants use of Plaintiff's check payments was contrary and inconsistent with Plaintiffs right to the property.

45. Defendants intentionally changed Plaintiff's checks to cash, to be applied to Defendants account(s).

46. Defendants intentionally deprived Plaintiff of her property for an indefinite period of time.

47. Defendants have lost Plaintiff's payments, wrongfully sought to charge Plaintiff mortgage prepayment penalties, and illegally converted a portion of funds escrow to pay delinquent penalties, interest and county fees.

48. Defendants thereby wrongfully converted Plaintiffs property to its use, inconsistent with Plaintiffs rights to the property and in violation of New York law.

## Count IV
## Defamation

49. Paragraphs 1-48 are incorporated herein by reference.

50. A plaintiff pursuing a defamation claim must prove that the defendant made: (a) a false and defamatory statement about the plaintiff; (b) in unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community.

51. Defendants reported false statements regarding Plaintiff's credit to third parties, consumer reporting agencies, as set forth above.

52. These false statements have harmed Plaintiff's reputation in the community, resulting in Plaintiff's inability to obtain financing from banks and savings and loan institutions.

53. Defendants are therefore liable to Plaintiff for defamation.

54. Plaintiff's ability to conduct business and earn a living has been and continues to be directly and adversely damaged as a direct and proximate result of Defendants defamation.

## Count V
## Illegal Collection Practices

55. Paragraphs 1-54 are incorporated herein by reference.

56. Under the provisions of the Fair Debt Collection Practices Act of 1977 while attempting to collect on any account, bill or other indebtedness; communicate with a debtor by the collection practice must not be abusive.

57. The Defendants used false means to collect debt when they failed to accurately keep a counting of the Plaintiff's payments and alleged a debt in excess. Defendants failed to abide by and violated the conditions required by FDCPA as set forth above.

58. Because of the illegal collection practices of the Defendants, the Plaintiff has suffered harm for which Defendant is legally responsible.

## Count VI
## Fair Credit Reporting Act

59. Paragraphs 1-58 are incorporated herein by reference.

60. Under the authority of the Fair Credit Reporting Act, § 617, 15 U.S.C. § 1681o, any person who is negligent in failing to comply with any requirement imposed under the title of the Fair Credit Reporting Act with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

61. The Fair Credit Reporting Act, § 623, 15 U.S.C. § 1681s-2, imposes duties upon furnishers of information to consumer reporting agencies.

62. These duties include providing accurate information to consumer reporting agencies, correct errors upon notice and confirmation of errors, acting to correct and update inaccurate and incomplete information as reported to consumer reporting agencies, acting to conduct investigations following notice of disputed information furnished to a consumer reporting agency, and acting to report corrections to inaccurate information discovered as result of investigation to consumer reporting agencies.

63. The Defendants breached their duty to the Plaintiff by reporting information with actual knowledge of errors, failing to correct after notice and confirmation of errors, failing to correct and update inaccurate and incomplete information as reported to consumer reporting agencies, failing to conduct investigation following notice of disputed information furnished to a consumer reporting agency, and failing to report corrections to inaccurate information discovered as result of investigation to consumer reporting agencies.

64. As a direct and proximate result of Defendants breach of its duties, Plaintiff has incurred actual damages and tangible economic harm.

## Count VII
## Breach of Contract

65. Paragraphs 1-64 are incorporated herein by reference.

66. Plaintiff and Defendant, as servicer and agent, entered into a Promissory Note on October 22, 2001 which required Defendant to first apply all payments to interest, then principal and then to any other allowed charges as stated in the Note.

67. Defendants failed to credit Plaintiff for payments as stated in the Note and therefore

is in breach of contract as stated above.

68. Plaintiff is entitled to rescind the contract and for all payments and charges to be fully refunded to Plaintiff by Defendants and their principals.

## Count VIII
## Unconsionability

69. Paragraphs 1-68 are incorporated herein by reference.

70. The Restatement Second of Contracts describes an unconscionable contract or term, allowing that the court may refuse to enforce an unconscionable contract, particularly to prevent an unjust outcome. Mortgage foreclosure is an equitable action and all the principles of equity apply. Cross v. Federal National Mortgage Ass'n, 359 So.2d 464 (Fla. 4th DCA 1978).

71. Amerifirst Federal Savings and Loan v. Century 21, 416 So. 2d 45 (3rd DCA 1982) established that it would be unconscionable for a lender to foreclose on a property after they have accepted payment subsequent to the missed or late payment.

## Count IX
## Violations of RESPA

72. Paragraphs 1-69 are incorporated herein by reference.

73. Defendants violated RESPA by the following conduct:

    a. Failing to meet the requirements of 12 U.S.C. § 2605 regarding transfer of servicing and responding to qualified written requests;

    b. Failing to meet the requirements of 12 U.S.C. § 2609 regarding escrow account statements, collection of escrow and notification of shortage in escrow account.

74. Plaintiffs is entitled to relief under the RESPA, including damages and a declaratory judgment that the Defendants conduct violates RESPA

## Count X
## Violations of TILA

75. Paragraphs 1-74 are incorporated herein by reference.

76. Thousands of notes and mortgages serviced by Defendants are adjustable rate

mortgages, subject to the disclosure requirements of Reg. Z, 12 C.F.R § 226.20 (c) for variable rate

adjustments.

77. Pursuant to 12 C.F.R. R § 226.20 (c), Defendants are required to include in its

variable rate adjustment disclosure a statement of the loan balance. 12 C.F.R. R § 226.20 (c)(4).

78. As a result of the imposition of unauthorized or inflated charges, Defendants failed

to accurately disclose the loan balance. Defendants' disclosures state a loan balance that is higher than

it would have been but for Defendants' intentional improper charges.

79. Plaintiff has been damaged by such violations, in that they have been charged

improper fees or charges for excess forced placed insurance, and in that they have either paid such fees

or had their property encumbered by such fees.

80. Plaintiff is entitled to relief under TILA, including damages and declaratory

judgment that Defendants' conduct violates TILA.

## Count XI
## Intentional Misrepresentation

81. Paragraphs 1-80 are incorporated herein by reference.

82. Defendants have represented to the Plaintiff that Defendants are entitled to collect

various loan charges that were not legally due and owing.

83. Defendants' representations concerning its entitlement to collect such fees and

charges and Plaintiffs did pay such fees and charges to their detriment.

84. Plaintiff's reliance was reasonable or justifiable in the circumstances.

85. Plaintiff has suffered damages.

86. Plaintiff is entitled to relief for misrepresentation.

## Count XII
### Negligence/Negligent Servicing

87. Paragraphs 1-86 are incorporated herein by reference.

88. Defendants owed Plaintiff a duty of care with respect to servicing her mortgage

loans for reasons included, without limitation, that the loans was secured by an interest in the

homeowner's residence and that lack of care would result in overpayments causing great economic

hardship.

89. The duty of care required reasonable diligence, *inter alia*,

   a. to avoid incurring unnecessary charges for property insurance;
   b. to make payments due from funds being held in the borrower's escrow accounts in a timely fashion; and
   c. to correctly calculate prepayment penalties due under applicable law

90. Defendants' conduct with respect to Plaintiff was far below applicable standards for

mortgage loan servicing.

91. Defendants' conduct was negligent with respect to Plaintiff.

92. Defendants' conduct was the proximate cause of damages to Plaintiff.

93. Plaintiff is entitled to relief for Defendants' negligence.

## Count XIII
### Breach of Fiduciary Duty

14

94. Paragraphs 1-93 are incorporated herein by reference.

95. Defendants' assumed fiduciary duties with respect to the servicing of mortgage loans and monies it held or charged in escrow for Plaintiff.

96. Defendants' breached its fiduciary duties charging excessive forced placed insurance premiums to the escrow accounts of the class members.

97. Defendants' breached its fiduciary duties by charging finance charges on such excessive forced placed insurance premiums.

98. Plaintiff was damaged by Defendants' breach of fiduciary duties.

99. Plaintiff is entitled to relief for Defendants' breach.

## Count XIV
### Unjust Enrichment

100.    Paragraphs 1-99 are incorporated herein by reference.

101.    Defendants have engaged in unlawful collection activities.

102.    Defendants have collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Defendants' to collect such fees and charges.

103.    Said conduct sounds in equity under the common law of unjust enrichment or money had and received and constructive trust.

104.    Defendants' has been unjustly enriched by its conduct.

105.    Plaintiff has suffered loss by virtue of Defendants' conduct.

106.    Plaintiff is entitled to relief for unjust enrichment.

## Count XV
## Declaratory and Injunctive Relief

107.    Paragraphs 1-106 are incorporated herein by reference.

108.    Defendants have engaged in and continues to engage in conduct that has a great probability of causing substantial and irreparable harm.

109.    Plaintiff is entitled to declaratory relief that Defendants' conduct is unlawful.

110.    Plaintiff is entitled to injunctive relief necessary to insure that such conduct will not continue into the future, and to provide uniform standards of conduct for servicing Plaintiff's mortgage loan.

## Count XVI
## Infliction of Emotional Distress

111.    The allegations of paragraphs 1-110 in this pleading are incorporated as if fully rewritten herein.

112.    This claim is for tortuous infliction of emotional distress caused to Plaintiff by Defendants.

113.    Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

114.    During the course of their actions, and/or subsequent thereto, Defendant has recklessly and/or intentionally caused severe emotional distress to Plaintiff without protection of law and at a time when it knew or should have known that its actions would do so.

115.    As a direct and proximate result thereof, Plaintiff was injured and may continue to suffer such injury in the future.

**WHEREFORE,** the Plaintiff having set forth their claims for relief against the Defendants respectfully pray of the Court as follows:

A.      That the Plaintiff has and recover against the Defendants a sum to be determine by the Court in the form of actual damages;

B.      That the Plaintiff has and recover against the Defendants a sum to be determined by the Court in the form of statutory damages;

C.      That the Plaintiff has and recover against the Defendants a sum to be determined by the Court in the form of punitive damages;

D.      That the Plaintiff has and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;

E.      That the underlying debt to Defendants be forever canceled and discharged and the Defendant be ordered to release all liens on the residence of the debtors and mark "paid in full" on all loan documents with said documents to be delivered to the debtors with all liens duly canceled and released as an additional sanction provided for under Section 362(h) of Title 11 of the United States Code; and

F      That this Court order the Defendants to pay to the Plaintiff her attorney's fees and costs and additional actual damages a sum to be determined by the Court for each failure to comply with any part of Section 2605 of Title 12 of the United States Code pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21(f) of Reg. X; and

G.  That the Plaintiff has such other and further relief as the Court may deem just and proper.

Date: July 30, 2007           _____/s/_____

                       Shmuel Klein
                       Law Office of Shmuel Klein, PC
                       268 Route 59 West
                       Spring Valley, NY 10977
                       Attorney for Plaintiff
                       (845) 425-2510