UNITED STATES BANKRUPTCY COURT                    **FOR PUBLICATION**

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                      :
                                            :   Chapter 13
EILEEN FAGAN,                               :
                                            :   Case No. 04 B 23460 (ASH)
           Debtor.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**A P P E A R A N C E S :**

**LAW OFFICE OF SHMUEL KLEIN, P.C.**
**Attorneys for Debtor**
**By:   Shmuel Klein, Esq.**
**268 Route 59**
**Spring Valley, NY 10977**

**STEVEN J. BAUM, P.C.**
**Attorneys for Secured Creditor**
**By:   Dennis Jose, Esq.**
**220 Northpointe Parkway, Suite G**
**Amherst, NY 14228**

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**


**DECISION GRANTING SANCTIONS
FOR MOTION TO LIFT STAY BASED ON FALSE CERTIFICATION**

   In *In re Gorshstein*, 285 B.R. 118 (Bankr. S.D.N.Y. 2002) I granted sanctions against

secured creditors in three separate cases where the secured creditors moved to vacate the automatic stay

on the basis of false certifications of post-petition defaults. The *Gorshstein* decision was "provoked by an

apparently increasing number of motions in this Court to vacate the automatic stay filed by secured

creditors often based on attorney affidavits certifying material post-petition defaults where, in fact, there

were no material defaults by the debtors." 285 B.R. at 120.

   The Secured Creditor's motion to lift the stay in this case is, in the vernacular, a "poster

child" for the type of abuse condemned in the *Gorshstein* decision. It is one of several such motions to

come before me in recent months. This decision granting substantial sanctions in favor of the debtor and

her attorney is published to reiterate and reinforce my strongly-held view that debtors must not be subjected to the risk of foreclosure and loss of their homes on the basis of false certifications of post-petition defaults.

### Jurisdiction

This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of reference in this District dated July 10, 1984 (Acting Chief Judge Ward).  This is a core proceeding under 28 U.S.C. § 157(b).

### The Facts

By Notice of Motion and Application both dated June 1, 2007 Deutsche Bank Trust Company of America's f/k/a Bankers Trust Company, as Trustee c/o Homecomings Financial, LLC (the "Secured Creditor") moved to terminate the automatic stay with respect to the debtor's residential real property in Stony Point, New York (the "Property").  The Secured Creditor holds by assignment a note dated October 9, 2001 in the amount of $284,750.00 secured by a mortgage on the Property.   The Application recited that as of May 30, 2007 there was an unpaid principal balance on the loan of $278,043.61 with interest thereon in the amount of $20,553.51 plus late charges in the amount of $946.28, aggregating $299,543.40.

The debtor filed her petition under Chapter 13 on September 21, 2004.  Thus, the debtor's first post-petition mortgage payment was due for October 2004.

Paragraph 3 of the Application states as follows:

> As of the 30th day of May, 2007, the Debtor has failed to make 4 post-petition payments in the amount of $4,020.03 which represents the payments due the 1st day of February, 2007 through May, 2007 and has not cured said default.

As amplified below, this statement was false.

Annexed to the Application was an affidavit sworn to by John Cody, an Assistant Vice President of Homecomings Financial Network, sworn to April 3, 2006 in which Mr. Cody swore in paragraph 5:

- 2 -

> As of the 31st day of March, 2006, the Debtor has failed to make 2 post-petition payments in the amount of $3,709.17 which represents the payments due the 1st day of February, 2006 through March, 2006 and has not cured said default.

The Cody affidavit was submitted in support of a motion filed by the Secured Creditor in 2006 and was erroneously annexed to the instant motion. The quoted statement from the Cody affidavit was false when made in 2006.

Belatedly recognizing that the Cody affidavit applied to the Secured Creditor's baseless 2006 motion to lift the stay, on June 8, 2007 counsel for the Secured Creditor filed an affidavit sworn to by Dory Goebel, a Bankruptcy Representative of Homecomings Financial, LLC, sworn to June 1, 2007. In paragraph 5 of his affidavit, Mr. Goebel swore as follows:

> As of the 30th day of May, 2007, the Debtor has failed to make 4 post-petition payments in the amount of $4,020.03 which represents the payments due the 1st day of February, 2007 through May, 2007 and has not cured said default.

Mr. Goebel's sworn statement quoted above was false.

The instant motion was noticed for presentment on June 14 with a hearing date of June 20, 2007 if objections were timely served and filed. On June 6 counsel for the debtor filed the debtor's affirmation in opposition noting that since the filing of her case she had made all post-petition payments required under the mortgage, and all such payments were cashed by the Secured Creditor. Copies of the debtor's payment checks were attached to the opposing affirmation. The debtor sought punitive sanctions for the "frivolous motion," the Secured Creditor's second such motion. The Secured Creditor's attorney responded with a "Reply Affirtmation [sic] in Support of Secured Creditor's Motion to Terminate the Automatic Stay" dated June 13, 2007 (the "Reply Affirmation"). The Reply Affirmation noted that the initial Application incorrectly annexed the 2006 Cody affidavit and substituted the June 1, 2007 Goebel affidavit quoted above as Exhibit B. The Reply Affirmation also annexed as Exhibit C a document entitled "Post Petition Payment History for: Eileen Fagan BK Case No. 04-23460" with a notation at the bottom "ledger prepared on 06/13/07." This "Post Petition Payment History" is one of several such documents submitted by the Secured Creditor, all of which are of central importance on this contested matter because, as explained below, they all demonstrate that the debtor was substan-

- 3 -

tially current at all times post-petition. Despite Exhibit C, the Reply Affirmation concludes "that as of the Date of the Motion, the Debtor was due for the Months of February 2007 through May 2007 and the Month of June 2007 had become due." As amplified below, Exhibit C demonstrates that this statement was false.

The debtor responded by submitting a July 10, 2007 "Sur-Reply Affirmation in Opposition and Request for Attorney Fees" signed by Linda Fagan, the debtor's mother.  The Sur-Reply Affirmation stated in relevant part as follows:

> 3.  My daughter had a nervous breakdown aggravated by this bank about two years ago. Since then, I made each of the monthly mortgage payments to Homecomings which is the servicer for Deutsche Bank Trust Company and they have CASHED thy [sic] payments.
>
> 4.  The latest submission is an outright lie, deceptive and deliberately out of order.   . . .
>
> 5.  Homecomings said they did not get the March 2007 payment and I immediately went to Western Union and sent them payment — which they accepted –- the day I found out about it.
>
> 6.  Homecomings deliberately holds the mortgage payment checks for several weeks and then cashes them to create late fees and penalties.  They also hold the checks for months, and then put two or three checks all in at once to create a bounce check situation.
>
> 7.  I sent the May 2007 mortgage on or about May 14, 2007.  When the check did not clear, I immediately called Homecomings when our May bank statement was received and inquired if they received the check.  After being on hold for 45 minutes, they acknowledged that they received the check, but the account servicing agent did not know why it was not cashed.  I called again two weeks later and they now said they never got the check.  I called my attorney and he advised me to stop the check and then overnight another check on June 13, 2007.  Even though they received it by OVERNIGHT courier on June 14, 2007, it was not cashed until June 27, 2007.  See Exhibit "A".
>
> 8.  Incredulously [sic], they then tried to cash the May 2007 "lost check" which I stopped (they first said they received and then said they never received) and then sent me notice to me [sic] in July that the check was "returned unpaid".  See Exhibit "B".
>
> 7. [sic] I AM CURRENT.  I have not missed a payment and am paying more than I have to.  . . .

It is significant that no affidavit contesting Linda Fagan's statements was submitted by the Secured Creditor.

A hearing on the motion was held on July 17, 2007 attended by the attorneys for both sides. At the hearing the Secured Creditor submitted a revised but undated "Post Petition Payment

- 4 -

History for: Eileen Fagan," which I received in evidence as Court Exhibit 1. After hearing oral argument of counsel, I adjourned the hearing to August 22 in order to give the Secured Creditor an opportunity to make a further submission demonstrating, if it could, that the debtor was in arrears post-petition, which did not appear likely in view of the original "Post Petition Payment History" prepared on 06/13/07 and the amended "Post Petition Payment History" marked Court Exhibit 1. After oral argument at the August 22 hearing, I scheduled a final hearing for September 18.

The Secured Creditor's attorney then submitted a "Supplimental [sic] Reply Affirtmation [sic] in Support of Secured Creditor's Motion to Terminate the Automatic Stay" dated August 31, 2007 ("Supplemental Reply Affirmation"). The Supplemental Reply Affirmation annexes as Exhibit C a copy of the "Post Petition Payment History" which was marked as Court Exhibit 1 at the July 17 hearing. It also annexes as Exhibit B yet another "Post Petition Payment History" (undated) with numbers slightly different from the numbers contained on Exhibit C (Court Exhibit 1). The Supplemental Reply Affirmation acknowledged error in the original motion,[1] but concluded that "when the Motion for Relief was filed on June 1, 2007, the Debtor was delinquent with her post-petition mortgage obligations and due for the months of April 2007 through May 2007." Once again, as amplified below, all three versions of the Secured Creditor's Post Petition Payment History demonstrate that the debtor has never been materially delinquent in her post-petition mortgage obligations.

Paragraph 15 of the Supplemental Reply Affirmation states that "As per the most recent information received from the Secured Creditor, the Debtor has paid monies subsequent to the filing of the Motion that would bring her post-petition current." The Affirmation notes further that the debtor has commenced a 16-count adversary proceeding complaint against the Secured Creditor which raises, *inter alia*, certain of the allegations of bad faith asserted by the debtor against the Secured Creditor in opposing

---

[1] Paragraph 6 of the Supplemental Reply Affirmation states:

> 6. **This Law Firm regrettably concedes that during the preparation of the Motion for Relief from Stay and the Bank Affidavit, it erroneously represented that the Debtor was due for the months of <u>February through May of 2007</u> when in fact the Debtor was due for the months of <u>April through May of 2007</u>.** (Emphasis in original)

- 5 -

the motion to lift the stay. Consequently, in the "Wherefore" clause "Secured Creditor respectfully requests a finding that its Motion for Relief dated June 1, 2007 was filed in good faith and said Motion be marked withdrawn with the parties to litigate the issued [sic] raised by the Debtor in her opposition in detail within the confines of the now pending Adversary Proceeding."

At the September 18 third and final hearing on this motion to lift stay, I asked the Secured Creditor's attorney to explain and confirm the significance of the several Post Petition Payment History computer printouts submitted by Secured Creditor in purported support of the motion. To that we now turn.

### The Debtor's Post-Petition Payment History

For purposes of this analysis, I shall focus on the Post Petition Payment History which was submitted by the Secured Creditor at the July 17 hearing and marked as Court Exhibit 1, a copy of which was submitted as Exhibit C to the Secured Creditor's Supplemental Reply Affirmation.

Since the debtor's Chapter 13 case was filed on September 21, 2004, the first post-petition mortgage payment was due October 1, 2004, with a two-week grace period.

The following reproduces the Court Exhibit 1 version of the debtor's Post Petition Payment History in material part:

04-23460-rdd    Doc 42    Filed 09/24/07    Entered 09/24/07 16:56:59    Main Document
Pg 7 of 10

| Date | Amt Rec'd | Amt Applied | Applied To | Unused | Suspense |
|---|---|---|---|---|---|
| 10/12/04 | $ 2,977.00 | $ 2,959.83 | 10/01/04 | $ 17.17 | $ 17.14 |
| 11/16/04 | $ 2,977.00 | $ 2,959.83 | 11/01/04 | $ 17.17 | $ 34.34 |
| 12/13/04 | $ 2,977.75 | $ - | suspense | $ 2,977.75 | $ 3,012.09 |
| 01/18/05 | $ 2,977.75 | $ 3,161.56 | 12/01/04 | $ (183.81) | $ 2,828.28 |
| 02/22/05 | $ 2,977.75 | $ 3,161.56 | 01/01/05 | $ (183.81) | $ 2,644.47 |
|  |  | * | *     * |  |  |
| 10/31/06 | $ 4,050.00 | $ 3,967.35 | 09/01/06 | $ 82.65 | $ 3,465.12 |
| 12/04/06 | $ 4,050.00 | $ 3,967.35 | 10/01/06 | $ 82.65 | $ 3,547.77 |
| 01/05/07 | $ 4,050.00 | $ 3,967.35 | 11/01/06 | $ 82.65 | $ 3,630.42 |
| 02/06/07 | $ 4,200.00 | $ 4,020.03 | 12/01/06 | $ 179.97 | $ 3,810.39 |
| 03/07/07 | $ 4,200.00 | $ 4,020.03 | 01/01/07 | $ 179.97 | $ 3,990.36 |
| 03/30/07 | $ 4,208.99 | $ - |  | $ 4,208.99 | $ 8,199.35 |
| 04/06/07 | $ (4,208.99) | $ - | NSF | $ (4,208.99) | $ 3,990.36 |
| 04/12/07 | $ 4,021.00 | $ 4,020.03 | 02/01/07 | $ 0.97 | $ 3,991.33 |
| 04/30/07 | $ 4,050.00 | $ 4,020.03 | 03/01/07 | $ 29.97 | $ 4,021.30 |
| 06/25/07 | $ 4,100.00 | $ - | suspense | $ 4,100.00 | $ 8,121.30 |
| 06/25/07 | $ 4,200.00 | $ - | suspense | $ 4,200.00 | $12,321.30 |
| 07/03/07 | $ (4,100.00) | $ - | NSF | $ (4,100.00) | $ 8,221.30 |
| 07/05/07 | $ 4,200.00 | $ 4,020.03 | 04/01/07 | $ 179.97 | $ 8,401.27 |
| 07/05/07 | $ - | $ 4,020.03 | 05/01/07 | $ (4,020.03) | $ 4,381.24 |
| 07/05/07 | $ - | $ 4,020.03 | 06/01/07 | $ (4,020.03) | $ 361.21 |
| 07/27/07 | $ 4,050.00 | $ 4,020.03 | 07/01/07 | $ 29.97 | $ 391.18 |

The Post Petition Payment History reveals the following facts. On 10/12/04[2] the Secured Creditor applied the debtor's payment, $2,977, to the mortgage payment due 10/01/04, $2,959.83, leaving an "Unused" amount of $17.17, which was placed in the "Suspense" account. Similarly, the 11/16/04

---

2  The "Date" column apparently lists the dates when the Secured Creditor cashed and/or credited the debtor's payments, not the dates when the payments were delivered to or received by the Secured Creditor. *See* paragraph 6 of the Linda Fagan affirmation, quoted above.

payment was applied to the mortgage payment due 11/01/04 with an "Unused" portion which increased the Suspense account to $34.34. However, it appears that the required mortgage payment increased effective 12/01/04 to $3,161.56. Since the debtor's 12/13/04 payment was only $2,977.75, the Secured Creditor applied no portion of this payment to the 12/01/04 mortgage payment due and placed the entire December payment as "Unused" in the Suspense account. At that point the debtor was in "arrears" to the extent of $150.22 ($2,977 plus $34.34 less $3,161.56). Thereafter, the Secured Creditor applied the debtor's payments made in January and February to the mortgage payments due in December and January, and this pattern continued through the 10/31/06 payment, which was applied to the mortgage payment due 09/01/06. No payment was recorded as cashed or applied for November 2006, and consequently the 12/04/06 payment was applied to the amount due on 10/01/06. The 03/30/07 payment of $4,208.99 was apparently returned for insufficient funds (NSF) and is so recorded as of 04/06/07. Thus, the payment cashed on 04/12/07 of $4,021 was credited to the mortgage payment due 02/01/07, and the payment cashed 04/30/07 in the amount of $4,050 was credited to the mortgage payment due 03/01/07.

    Let us examine the debtor's payment situation as of June 1, 2007, the date of the Secured Creditor's instant motion to lift the stay. As of April 30, the Secured Creditor had credited the debtor with payments through and including the mortgage payment due on March 1. But as of April 30, the Secured Creditor held in the debtor's Suspense account $4,021.30, which was $1.27 *in excess* of the mortgage payment which was due as of April 1. Thus, as of April 1, 2007 *the debtor was not in arrears post-petition*. The facts concerning the debtor's mortgage payment due May 1, 2007 are described in paragraph 7 of the Linda Fagan affirmation, which is not disputed by the Secured Creditor and which is substantially confirmed by debtor's Post Petition Payment History printout. Linda Fagan sent the Secured Creditor a check for $4,100 for the May 1 payment on or about May 14, but inexplicably and inexcusably the Secured Creditor neither cashed the check nor credited her with the payment. As stated in paragraph 7 of her affirmation, Linda Fagan was told that the Secured Creditor had received the check but the servicing agent did not know why it was not cashed. She subsequently sent a replacement check for $4,200 to the Secured Creditor by overnight courier, which was credited to the debtor's account on

June 25.  On the same date, June 25, it appears that the Secured Creditor attempted to cash the May check for $4,100, but Linda Fagan had stopped payment on that check.

To summarize, as of June 1, 2007, the date of this motion to vacate the automatic stay, the debtor's account with the Secured Creditor was current.  The Post Petition Payment History shows that as of 04/30/07 the Secured Creditor had applied the debtor's payment obligations through and including March 1, 2007 and, as of April 30, the debtor was current through the payment due April 1 because the Secured Creditor was holding $4,021.20 in the debtor's Suspense Account which was sufficient to pay the April 1 payment obligation in the amount of $4,020.03.  The undisputed record also shows that the debtor delivered her check for May in the amount of $4,100 to the Secured Creditor on or about May 14, 2007, which was more than sufficient to cover the payment due May 1 of $4,020.03.  Thus, the debtor's post-petition obligations to the Secured Creditor were current with a credit balance of $81.24 when the Secured Creditor filed this motion on June 1, 2007.  And, as acknowledged by the Secured Creditor and shown in the Post Petition Payment History, the debtor has remained current to date.

Despite these facts, which are indisputable based upon the Secured Creditor's own records, the Secured Creditor has persisted in this baseless motion through multiple submissions and three Court hearings.  Moreover, this is the second motion to vacate the stay against the debtor based on false certifications of default filed by the Secured Creditor.  This Court sanctioned the Secured Creditor by order dated May 4, 2006 in the amount of $700 on its first baseless motion.

For the reasons set forth above and in the *Gorshstein* decision, I shall enter an order for sanctions requiring the Secured Creditor to pay an amount sufficient to recompense the debtor's attorney in full for his fees and costs in defending the motion and in the further amount of $10,000 payable to the debtor.

**Conclusion**

Motions to lift the stay may be routine and inconsequential to secured creditors and their counsel. But to a debtor and his or her family, such a motion and the consequent loss of the family home may be devastating. Most creditors and counsel are conscientious. But some are callous by design or inadvertence, as exemplified by this motion and two others presented to the Court the same week. The danger here is that a debtor who does not have an attorney or the resources of intellect or spirit to defend against a baseless motion may lose his/her home despite being current on post-petition mortgage and plan payments.

I know of no way to protect against such an eventuality if no material consequence attaches to the filing of motions based upon false certifications of fact. Secured creditors and their counsel who know that filing a false motion to lift the stay will result in material sanctions if caught will undoubtedly be motivated to a higher standard of care.

Dated: White Plains, NY
        September 24, 2007

                                                    /s/Adlai S. Hardin, Jr.
                                                         U.S.B.J.